The Honorable Ricardo S. Martinez

```
_____ FILED      _____ ENTERED
_____ LODGED     _____ RECEIVED

       JAN 18 2023
            AT SEATTLE
     CLERK U.S. DISTRICT COURT
  WESTERN DISTRICT OF WASHINGTON
BY                        DEPUTY
```

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR22-160 RSM |
| Plaintiff, | |
| v. | **PLEA AGREEMENT** |
| JUSTIN COSTELLO, | |
| Defendant. | |

The United States, through United States Attorney Nicholas W. Brown and Assistant United States Attorneys Justin W. Arnold and Michael Dion of the Western District of Washington and defendant Justin Costello and defendant Justin Costello's attorney, Assistant Federal Public Defender Dennis Carroll, enter into the following Plea Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and (B).

1.    **The Charge**.  Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters a plea of guilty to the following charge contained in the Indictment:

1      Securities Fraud, as charged in Count 20, in violation of Title 15, United States

2 Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section

3 240.10b-5.

4      By entering a plea of guilty, Defendant hereby waives all objections to the form of

5 the charging document. Defendant further understands that before entering any guilty

6 plea, Defendant will be placed under oath. Any statement given by Defendant under oath

7 may be used by the United States in a prosecution for perjury or false statement.

8      2.   **Elements of the Offense**. The elements of the offense to which Defendant

9 is pleading guilty are as follows:

10      *First*, the Defendant willfully used a device or scheme to defraud someone,

11 made an untrue statement of a material fact, and engaged in any act, practice, or course of

12 business that operated or would operate as a fraud or deceit upon any person;

13      *Second*, the Defendant's acts were undertaken and statements were made in

14 connection with the purchase and sale of a security; that is, the securities of GRN

15 Holding Corporation;

16      *Third*, the Defendant directly or indirectly used the Internet and national

17 securities exchanges in connection with these acts and making these statements; and

18      *Fourth*, the Defendant acted knowingly.

19      3.   **The Penalties**. Defendant understands that the statutory penalties

20 applicable to the offense to which Defendant is pleading guilty are as follows:

21      For the offense of Securities Fraud, as charged in Count 20: A maximum term of

22 imprisonment of up to twenty (20) years, a fine of up to five million dollars ($5,000,000),

23 a period of supervision following release from prison of up to three (3) years, and a

24 mandatory special assessment of 100 dollars. If a probationary sentence is imposed, the

25 probation period can be for up to five (5) years.

26      Defendant understands that supervised release is a period of time following

27 imprisonment during which Defendant will be subject to certain restrictive conditions and

Plea Agreement - 2
*United States v. Justin Costello*, CR22-160 RSM

1   requirements.  Defendant further understands that, if supervised release is imposed and
2   Defendant violates one or more of the conditions or requirements, Defendant could be
3   returned to prison for all or part of the term of supervised release that was originally
4   imposed.  This could result in Defendant serving a total term of imprisonment greater
5   than the statutory maximum stated above.

6         Defendant understands that as a part of any sentence, in addition to any term of
7   imprisonment and/or fine that is imposed, the Court must order Defendant to pay
8   restitution to any victim of the offense, as required by law.

9         Defendant further understands that the consequences of pleading guilty may
10  include the forfeiture of certain property, either as a part of the sentence imposed by the
11  Court, or as a result of civil judicial or administrative process.

12        Defendant agrees that any monetary penalty the Court imposes, including the
13  special assessment, fine, costs, or restitution, is due and payable immediately and further
14  agrees to submit a completed Financial Disclosure Statement as requested by the United
15  States Attorney's Office.

16        Defendant understands that, if pleading guilty to a felony drug offense, Defendant
17  will become ineligible for certain food stamp and Social Security benefits as directed by
18  Title 21, United States Code, Section 862a.

19        4.    **Rights Waived by Pleading Guilty.**  Defendant understands that by
20  pleading guilty, Defendant knowingly and voluntarily waives the following rights:

21              a.    The right to plead not guilty and to persist in a plea of not guilty;

22              b.    The right to a speedy and public trial before a jury of Defendant's
23  peers;

24              c.    The right to the effective assistance of counsel at trial, including, if
25  Defendant could not afford an attorney, the right to have the Court appoint one for
26  Defendant;

27

Plea Agreement - 3
*United States v. Justin Costello*, CR22-160 RSM

1          d.     The right to be presumed innocent until guilt has been established

2 beyond a reasonable doubt at trial;

3          e.     The right to confront and cross-examine witnesses against Defendant

4 at trial;

5          f.     The right to compel or subpoena witnesses to appear on Defendant's

6 behalf at trial;

7          g.     The right to testify or to remain silent at trial, at which trial such

8 silence could not be used against Defendant; and

9          h.     The right to appeal a finding of guilt or any pretrial rulings.

10     5.     **United States Sentencing Guidelines**. Defendant understands and

11 acknowledges that the Court must consider the sentencing range calculated under the

12 United States Sentencing Guidelines and possible departures under the Sentencing

13 Guidelines together with the other factors set forth in Title 18, United States Code,

14 Section 3553(a), including: (1) the nature and circumstances of the offense; (2) the

15 history and characteristics of Defendant; (3) the need for the sentence to reflect the

16 seriousness of the offense, to promote respect for the law, and to provide just punishment

17 for the offense; (4) the need for the sentence to afford adequate deterrence to criminal

18 conduct; (5) the need for the sentence to protect the public from further crimes of

19 Defendant; (6) the need to provide Defendant with educational and vocational training,

20 medical care, or other correctional treatment in the most effective manner; (7) the kinds

21 of sentences available; (8) the need to provide restitution to victims; and (9) the need to

22 avoid unwarranted sentence disparity among defendants involved in similar conduct who

23 have similar records. Accordingly, Defendant understands and acknowledges that:

24          a.     The Court will determine Defendant's Sentencing Guidelines range

25 at the time of sentencing;

26

27

Plea Agreement - 4
*United States v. Justin Costello*, CR22-160 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

b.    After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

c.    The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

d.    Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

6.    **Ultimate Sentence**.  Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

7.    **Statement of Facts**.  Defendant admits Defendant is guilty of the charged offense. The parties agree on the following facts, and further agree that all the following conduct constitutes relevant conduct for sentencing purposes:

*Costello's Fraudulent Activity Concerning GRN Holding Corp.*

a.    Between at least November 2018 through May 2021, Defendant Justin Costello made or caused to be made material misrepresentations to purchasers and sellers of GRN Holding Corp. securities through public and private statements concerning Costello's educational and professional background and GRN Holding Corp.'s purported acquisition of other companies.

b.    When soliciting funds directly from investors, Costello made several materially false representations concerning his educational and employment background, qualifications, assets, and investment strategy. Specifically, when soliciting investors, Costello made the following materially false representations:

Plea Agreement - 5
*United States v. Justin Costello*, CR22-160 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

i.    He graduated from the University of Minnesota with a degree in Public Business Administration and had a Master's in Business Administration (MBA) from Harvard Business School. As set forth below in paragraph 7(d), Costello filed or caused to be filed an Amended Form 8-K with the SEC concerning this issue on October 2, 2019;

ii.    He had far more personal assets than he actually did;

iii.    He managed money for wealthy individuals;

iv.    He had 14 years of very similar experience on Wall Street; and

v.    He was the Chief Executive Officer of GRN Funds, LLC, a private equity fund and hedge fund with over $1 billion in assets under management.

c.    Costello also made several materially false public statements to the purchasers and sellers of GRN Holding Corp. securities through filings with the U.S. Securities and Exchange Commission (SEC) and press releases. As set forth below, these false and fraudulent statements concerned Costello's educational history, the size of Costello's company, and GRN Holding Corporation's potential acquisition of other companies.

d.    On July 1, 2019, Discovery Gold Corporation (the publicly traded company that would become GRN Holding Corp.) filed a Form 8-K with the SEC announcing the purchase of the majority of its outstanding shares by GRN Funds, LLC. In the Form 8-K, which Costello signed as CEO, Costello falsely described himself as a graduate of the University of Minnesota with a degree in Public Business Administration and a graduate of Harvard Business School. The Form 8-K also falsely described GRN Funds, LLC as a "private equity and hedge fund." At the time, the GRN Funds, LLC website falsely stated that the company had $1.15 billion in assets under management. On October 2, 2019, Costello filed or caused to be filed an Amended Form 8-K with the SEC that stated Costello was a graduate of Winona State University with a degree in Public Administration who attended Harvard University but did not graduate. This statement was also misleading in that Costello only took one course in Harvard's continuing education program.

e.    On November 12, 2019, GRN Holding Corp., at Costello's direction, issued a press release stating it had signed non-binding Letters of Intent to acquire at least ten companies, including Pacific Banking Corp, subject to the completion of due diligence and execution of material definitive agreements. The press release also stated that the acquisitions would "reflect a material change to the company's business plans

Plea Agreement - 6
*United States v. Justin Costello*, CR22-160 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and will result in the acquisition of a significant amount of assets." Costello included or caused to be included this information in GRN Holding Corp.'s Form 10-Q filed with the SEC on December 23, 2019. Throughout January and February 2020, at Costello's direction GRN Holding Corp. issued ten press releases announcing the completion of due diligence for each company.

f.    For example, on or about February 24, 2020, GRN Holding Corp. issued a press release announcing that it had "completed its due diligence in connection with the acquisition of Pacific Banking Corp." In the press release, GRN Holding Corp. falsely described Pacific Banking Corp.'s services as meeting "the highest standards of compliance according to BSA and FinCEN requirements" and that the "PBC Compliance Program performs a full audit and compliance assessment of legacy cash and monitors and evaluates daily transactions." In fact, as set forth below, at the time of the issuance of the press release, Pacific Banking Corp., operating through Costello, was actively defrauding at least two marijuana businesses.

g.    Beginning in July 2020, at Costello's direction, GRN Holding Corp. began announcing binding Letters of Intent to acquire the same companies. In a Form 10-K filed with the SEC on August 13, 2020, GRN Holding Corp. stated that it was closing on Letters of Intent with the companies subject to the execution of material definitive agreements. Contrary to these statements, GRN Holding Corp., acting through Costello, never completed the acquisitions of the companies even though Costello was an affiliate, shareholder, owner, or manage of each company. In addition, and contrary to Costello's representations to investors, these companies had little to no revenue or assets.

h.    Between July 1, 2019, and May 18, 2021, over 7,500 investors purchased and sold GRN Holding Corp. securities while Costello was making, and causing to be made, the material misrepresentations concerning GRN Holding Corp. Collectively, these investors lost approximately $25 million.

***Costello's Fraudulent Activity Concerning Hempstract, Inc.***

i.    Between February 2020, and April 2020, Costello made several material misrepresentations to investors concerning Hempstract, Inc. (formerly known as Riverdale Oil and Gas Corp.) in addition to the false statements set forth in paragraph 7b above. For example, Costello told one investor that a large grocery business in Chicago named Dominick's had made a $12 million purchase order for Hempstract products. In addition, in an investor presentation on March 9, 2020, Costello made several materially false statements concerning his background and the potential operation of Hempstract, including:

i.      He worked in Seattle, but also had offices in London and New York; and

ii.      He had over 400 clients in the marijuana industry for which he provided banking services.

j.      In addition, Costello made or caused to be made materially false statements concerning Hempstract in disclosure statements. Specifically, Costello falsely stated that he received 24 million shares of Riverdale Oil & Gas Corp. stock in exchange for Hempstract, LLC's assets, valued at approximately $11 million. These assets purportedly included 3,125 kilograms of CBD Isolate, valued at approximately $10.7 million. In fact, Hempstract, LLC did not have $10.7 million in assets at the time of the merger.

k.      Between November 2018 and June 2021, in reliance on Costello's false statements set forth above, approximately 29 investors collectively lost approximately $6 million.

***Costello's Fraudulent Activity Concerning Marijuana Companies***

l.      From at least 2017 through September 2022, Costello owned and controlled companies, including Pacific Banking Corp., that purportedly provided banking services to marijuana businesses located in the States of Washington, California, Colorado, Illinois, and Alaska.

m.      Between April 2019 and March 2020, Costello entered into agreements with Marijuana Business 1, Marijuana Business 2, and Marijuana Business 3 in which Costello, through Pacific Banking Corp., agreed to provided banking services to these marijuana businesses. In the agreements, Costello falsely represented that Pacific Banking Corp. would only take actions on the accounts or execute transactions as authorized by the marijuana businesses.

n.      Contrary to his representations to the marijuana businesses, between May 2019 and July 2021, Costello fraudulently diverted funds belonging to the marijuana businesses to benefit Costello's other companies, to make payments on behalf of other Pacific Banking Corp. clients, and for his personal benefit.

o.      Between May 2019 and September 2022, Costello provided the marijuana businesses with false and fraudulent Pacific Banking Corp. account statements that falsely showed that Pacific Banking Corp. still maintained custody and control of the funds belonging to marijuana businesses.

Plea Agreement - 8
*United States v. Justin Costello*, CR22-160 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

p.      Between October 2020 and September 2021, Costello entered into Mutual Termination and Release Agreements with Marijuana Business 2 and Marijuana Business 3. In these Agreements, Costello falsely agreed to return the funds belonging to Marijuana Business 2 and Marijuana Business 3. In fact, Costello had diverted and misappropriated the funds, and he failed to make the payments required under the Agreements.

q.      On September 15, 2022, Costello filed a Declaration in a pending lawsuit between Marijuana Business 1 and Pacific Banking Corp., GRN Funds, LLC, and Costello. In his Declaration, Costello falsely stated that Marijuana Business 1's funds were located "in an aggregate account in the name of Defendant GRN Funds, LLC" located at Sound Credit Union in Tacoma, Washington, and that the "'balance of funds as of September 9, 2022' is at least $2,923,858.13 for the funds in the account that are attributable to [Marijuana Business 1]." Contrary to Costello's sworn statements, the GRN Funds, LLC checking account at Sound Credit Union had a balance of $15.35 on September 9, 2022.

r.      In total, Costello fraudulently diverted $3,694,905.73 of the marijuana businesses (made up of $3,022,464.35 for Marijuana Business 1, $122,486.92 for Marijuana Business 2, and $549,954.46 for Marijuana Business 3).

***Costello's Fraudulent Pump-and-Dump Activity***

s.      Between October 2019 and January 2021, Costello engaged in a fraudulent pump-and-dump scheme through which Costello manipulated the price of a number of securities, including securities of Foothills Exploration Inc., REMSleep Holdings, Inc., Clancy Systems International Inc., Riverdale Oil and Gas Corp./Hempstract Inc., and Victoria Lake Inc.

t.      As part of his scheme, Costello purchased large blocks of stock of these companies at low prices. Costello then retained a paid another individual with the initials D.F. to use Twitter to fraudulently promote, or pump, the stocks by misrepresenting facts about the companies to drive up the stocks' prices. Costello simultaneously and secretly sold, or dumped his previously acquired shares at those artificially inflated prices.

u.      In total, Costello made $625,092.02 in illicit profits through the manipulation of these stocks in his pump-and-dump scheme.

The parties agree that the Court may consider additional facts contained in the Presentence Report (subject to standard objections by the parties) and/or that may be presented by the United States or Defendant at the time of sentencing, and that the factual

Plea Agreement - 9
*United States v. Justin Costello*, CR22-160 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  statement contained herein is not intended to limit the facts that the parties may present to

2  the Court at the time of sentencing.

3      8.    **Sentencing Factors**.  The parties agree that the following Sentencing

4  Guidelines provisions apply to this case:

5          a.    A base offense level of seven (7) pursuant to USSG §2B1.1(a);

6

7          b.    A twenty-two (22) level enhancement pursuant to USSG
   § 2B1.1(b)(1)(K) because the offense caused a loss to the victims of the offense of more

8  than $25,000,000 but less than $65,000,000;

9          c.    A two (2) level enhancement pursuant to USSG § 2B1.1(b)(2)(A)

10 because the offense involved ten (10) or more victims;

11         d.    A two (2) level enhancement pursuant to USSG § 2B1.1(b)(10)
   because the offense involved sophisticated means and Defendant engaged in or caused

12 the conduct constituting sophisticated means;

13

14         e.    A four (4) level enhancement pursuant to USSG § 2B1.1(b)(20)
   because the offense involved a violation of securities law and, at the time of the offense,

15 Defendant was an officer or a director of a publicly traded company.

16

17     In addition, the United States reserves the right to seek, and Defendant reserves

   the right to oppose, the application of a two (2) level enhancement pursuant to USSG §

18 3C1.1.

19

20     The parties agree that other than as set forth in paragraph 9 below no other

   provisions of the United States Sentencing Guidelines apply.  Defendant understands,

21 however, that at the time of sentencing, the Court is free to reject these stipulated

22 adjustments, and is further free to apply additional downward or upward adjustments in

23 determining Defendant's Sentencing Guidelines range.

24     9.    **Acceptance of Responsibility.**  At sentencing, *if* the Court concludes

25 Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant

26 to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will

27

Plea Agreement - 10
*United States v. Justin Costello*, CR22-160 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  make the motion necessary to permit the Court to decrease the total offense level by three

2  (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the

3  United States by timely notifying the United States of Defendant's intention to plead

4  guilty, thereby permitting the United States to avoid preparing for trial and permitting the

5  Court to allocate its resources efficiently.

6        10.    **Agreed Recommendation Regarding Imprisonment**.  Pursuant to

7  Federal Rule of Criminal Procedure 11(c)(1)(B), the parties jointly agree to recommend

8  that the appropriate term of imprisonment to be imposed by the Court at the time of

9  sentencing is a term of 120 months.  Defendant understands that this recommendation is

10  not binding on the Court and the Court may reject the recommendation of the parties and

11  may impose any term of imprisonment up to the statutory maximum penalty authorized

12  by law.  Defendant further understands that Defendant cannot withdraw a guilty plea

13  simply because of the sentence imposed by the Court.  Except as otherwise provided in

14  this Plea Agreement, the parties are free to present arguments regarding any other aspect

15  of sentencing.

16        11.    **Restitution.**  Defendant shall make restitution to the victims of his offense

17  in a total amount of not less than $35 million which will be allocated among the victims

18  according to a schedule provided by the United States at sentencing, with credit for any

19  amounts already paid.

20          a.    The full amount of restitution shall be due and payable immediately

21  on entry of judgment and shall be paid as quickly as possible.  If the Court finds that the

22  defendant is unable to make immediate restitution in full and sets a payment schedule as

23  contemplated in 18 U.S.C. § 3664(f), Defendant agrees that the Court's schedule

24  represents a minimum payment obligation and does not preclude the U.S. Attorney's

25  Office from pursuing any other means by which to satisfy the defendant's full and

26  immediately-enforceable financial obligation, including, but not limited to, by pursuing

27

Plea Agreement - 11
*United States v. Justin Costello*, CR22-160 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   assets that come to light only after the district court finds that the defendant is unable to

2   make immediate restitution.

3          b.      Defendant agrees to disclose all assets in which Defendant has any

4   interest or over which Defendant exercises control, directly or indirectly, including those

5   held by a spouse, nominee, or third party.  Defendant agrees to cooperate fully with the

6   United States' investigation identifying all property in which Defendant has an interest

7   and with the United States' lawful efforts to enforce prompt payment of the financial

8   obligations to be imposed in connection with this prosecution.  Defendant's cooperation

9   obligations are:  (1) before sentencing, and no more than 30 days after executing this Plea

10  Agreement, truthfully and completely executing a Financial Disclosure Statement

11  provided by the United States Attorney's Office and signed under penalty of perjury

12  regarding Defendant's and Defendant's spouse's financial circumstances and producing

13  supporting documentation, including  tax returns, as requested; (2) providing updates

14  with any material changes in circumstances, as described in 18 U.S.C. §  3664(k), within

15  seven days of the event giving rise to the changed circumstances; (3) authorizing the

16  United States Attorney's Office to obtain Defendant's credit report before sentencing; (4)

17  providing waivers, consents or releases requested by the U.S. Attorney's Office to access

18  records to verify the financial information; (5) authorizing the U.S. Attorney's Office to

19  inspect and copy all financial documents and information held by the U.S. Probation

20  Office; (6) submitting to an interview regarding Defendant's Financial Statement and

21  supporting documents before sentencing (if requested by the United States Attorney's

22  Office), and fully and truthfully answering questions during such interview; and (7)

23  notifying the United States Attorney's Office before transferring any interest in property

24  owned directly or indirectly by Defendant, including any interest held or owned in any

25  other name, including all forms of business entities and trusts.

26

27

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1         c.     The parties acknowledge that voluntary payment of restitution prior

2  to the adjudication of guilt is a factor the Court considers in determining whether

3  Defendant qualifies for acceptance of responsibility pursuant to USSG § 3E1.1(a).

4         12.    **Forfeiture of Assets**.  Defendant understands that the forfeiture of assets is

5  part of the sentence imposed in this case.  Defendant agrees to forfeit to the United States

6  immediately Defendant's right, title, and interest in any and all property, real or personal,

7  constituting or derived from, any proceeds that Defendant obtained, directly or indirectly,

8  as a result of his commission of Securities Fraud, as charged in Count 20 in the

9  Indictment. This property is subject to forfeiture pursuant to Title 18, United States Code,

10  Section 981(a)(1)(C), by way of Title 28, United States Code, Section 2461(c), and

11  includes, but is not limited to, a judgment for a sum of money in the amount of

12  $625,092.02 (the "Forfeiture Money Judgment"), representing the proceeds Defendant

13  personally obtained, directly or indirectly, as a result of his commission of the securities

14  fraud scheme.

15         Defendant consents to the entry of an Order of Forfeiture for the unpaid amount, if

16  any, of the Forfeiture Money Judgment at the time of sentencing. Defendant

17  acknowledges that the United States will record the Order of Forfeiture against him in

18  King County, Washington.

19         Defendant agrees that the factors set forth in Title 21, United States Code, Section

20  853(p)(1)(A)-(E), have been satisfied. Defendant understands that the United States may

21  seek to pursue additional property of Defendant as substitute assets, pursuant to Title 21,

22  United States Code, Section 853(p), until such time as the Forfeiture Money Judgment is

23  paid in full. Defendant understands that the United States, at its discretion, may pursue

24  forfeiture of the following property as substitute assets:

25         a.  $60,000.05 in United States currency;

26         b.  63,311.95 Mexican pesos (converted to United States dollars);

27         c.  five PAMP 1oz .999 gold bars;

Plea Agreement - 13
*United States v. Justin Costello*, CR22-160 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

d.  one Sunshine Mint 1oz .999 gold bar

e.  one Chopard "Mille Miglia" limited edition 14/250 18k yellow gold
    wristwatch with black dial and original black leather band, Model # 1254,
    Serial # 939050;

f.  one Chopard "Monaco Historique" stainless steel wristwatch with white
    dial and black leather band, Model # 8568, Serial # 1929287;

g.  one 14k yellow gold Cuban link chain with 14k yellow gold gun pendants
    set with genuine 2.4mm round rubies, emeralds, and diamonds (9 of each)
    in grip of gun; and

h.  one 18k yellow gold grenade charm set with 31 0.01 carat full-cut round
    diamonds.

Defendant further understands and acknowledges that the Forfeiture Money Judgment is separate and distinct from any restitution the Court may order in this case. The United States agrees, however, that it will request the Attorney General apply any amounts it collects toward satisfaction of the Forfeiture Money Judgment to the restitution that is ordered. The United States also agrees that any amount Defendant pays toward restitution will be credited against this Forfeiture Money Judgment.

Defendant agrees to fully assist the United States in the forfeiture of the above-described property and to take whatever steps are necessary to pass clear title to the United States, including but not limited to: surrendering title and executing any documents necessary to effectuate such forfeiture; assisting in bringing any assets located outside the United States within the jurisdiction of the United States; and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture. Defendant agrees not to file a claim, or to assist any third party with filing a claim, to any of the above-described property in any federal forfeiture proceeding, administrative or judicial, which may be or has been initiated.

Plea Agreement - 14
*United States v. Justin Costello*, CR22-160 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The United States reserves its right to proceed against any remaining assets not identified in this Plea Agreement, including any property in which Defendant has any interest or control, if said assets constitute or are derived from proceeds of the securities fraud scheme.

13.     **Non-Prosecution of Additional Offenses**.  As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Plea Agreement based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation and to move to dismiss the remaining counts in the Indictment at the time of sentencing.  In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Plea Agreement.  Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Also, as part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Costello's wife – K.R. – for any offenses known to it as of the time of this Plea Agreement based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

14.     **Breach, Waiver, and Post-Plea Conduct**.  Defendant agrees that, if Defendant breaches this Plea Agreement: (a) the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United

1  States has evidence; (b) Defendant will not oppose any steps taken by the United States

2  to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea

3  Agreement; and (c) Defendant waives any objection to the re-institution of any charges

4  that previously were dismissed or any additional charges that had not been prosecuted.

5         Defendant further understands that if, after the date of this Plea Agreement,

6  Defendant should engage in illegal conduct, or conduct that violates any conditions of

7  release or the conditions of confinement (examples of which include, but are not limited

8  to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while

9  pending sentencing, and false statements to law enforcement agents, the Pretrial Services

10 Officer, Probation Officer, or Court), the United States is free under this Plea Agreement

11 to file additional charges against Defendant or to seek a sentence that takes such conduct

12 into consideration by requesting the Court to apply additional adjustments or

13 enhancements in its Sentencing Guidelines calculations in order to increase the applicable

14 advisory Guidelines range, and/or by seeking an upward departure or variance from the

15 calculated advisory Guidelines range.  Under these circumstances, the United States is

16 free to seek such adjustments, enhancements, departures, and/or variances even if

17 otherwise precluded by the terms of the Plea Agreement.

18        15.    **Waiver of Appellate Rights and Rights to Collateral Attacks.**

19 Defendant acknowledges that, by entering the guilty plea required by this Plea

20 Agreement, Defendant waives all rights to appeal from Defendant's conviction, and any

21 pretrial rulings of the Court, and any rulings of the Court made prior to entry of the

22 judgment of conviction.  Defendant further agrees that, provided the Court imposes a

23 custodial sentence that is within or below the Sentencing Guidelines range as determined

24 by the Court at the time of sentencing, Defendant waives to the full extent of the law:

25        a.     Any right conferred by Title 18, United States Code, Section 3742,

26 to challenge, on direct appeal, the sentence imposed by the Court, including any fine,

27

Plea Agreement - 16
*United States v. Justin Costello*, CR22-160 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   restitution order, probation or supervised release conditions, or forfeiture order (if

2   applicable); and

3             b.    Any right to bring a collateral attack against the conviction and

4   sentence, including any restitution order imposed, except as it may relate to the

5   effectiveness of legal representation.

6       This waiver does not preclude Defendant from bringing an appropriate motion

7   pursuant to 28 U.S.C. § 2241, to address the conditions of Defendant's confinement or

8   the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

9       If Defendant breaches this Plea Agreement at any time by appealing or collaterally

10   attacking (except as to effectiveness of legal representation) the conviction or sentence in

11   any way, the United States may prosecute Defendant for any counts, including those with

12   mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea

13   Agreement.

14       16.    **Voluntariness of Plea**. Defendant agrees that Defendant has entered into

15   this Plea Agreement freely and voluntarily, and that no threats or promises were made to

16   induce Defendant to enter a plea of guilty other than the promises contained in this Plea

17   Agreement or set forth on the record at the change of plea hearing in this matter.

18       17.    **Statute of Limitations**. In the event this Plea Agreement is not accepted

19   by the Court for any reason, or Defendant breaches any of the terms of this Plea

20   Agreement, the statute of limitations shall be deemed to have been tolled from the date of

21   the Plea Agreement to: (1) thirty (30) days following the date of non-acceptance of the

22   Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach

23   of the Plea Agreement by Defendant is discovered by the United States Attorney's

24   Office.

25       18.    **Completeness of Plea Agreement**. The United States and Defendant

26   acknowledge that these terms constitute the entire Plea Agreement between the parties,

27   except as may be set forth on the record at the change of plea hearing in this matter. This

Plea Agreement - 17
*United States v. Justin Costello*, CR22-160 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Plea Agreement binds only the United States Attorney's Office for the Western District

2  of Washington.  It does not bind any other United States Attorney's Office or any other

3  office or agency of the United States, or any state or local prosecutor.

4          Dated: January 18, 2023.

5

6                                         _____

7                                         JUSTIN COSTELLO
                                          Defendant
8

9                                         _____

10                                        DENNIS CARROLL
                                          Attorney for Defendant
11

12                                        _____

13                                        JUSTIN W. ARNOLD
                                          Assistant United States Attorney
14

15                                        _____

16                                        MICHAEL DION
                                          Assistant United States Attorney
17

18

19

20

21

22

23

24

25

26

27

Plea Agreement - 18
*United States v. Justin Costello*, CR22-160 RSM