The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>JUSTIN COSTELLO,<br><br>　　　　　　Defendant. | NO. CR22-160 RSM<br><br>**UNITED STATES' SENTENCING MEMORANDUM** |

Over the span of more than three years, defendant Justin Costello engaged in several large-scale, wide-ranging fraudulent schemes.  Costello provided banking services to marijuana businesses, and then stole $3.6 million of his clients' funds. Costello defrauded local victims – some of whom he befriended – into investing in companies he controlled, resulting in $6 million in losses.  Costello defrauded another 7,500 public investors who bought stock in a public company he controlled, at a loss of another $25 million.  Finally, Costello brazenly committed a series of stock pump-and-dumps for over $600,000 personal profit with complete disregard to the harm he was causing to the financial market. While Costello's frauds allowed him to live a lavish

United States' Sentencing Memorandum - 1
*United States v. Justin Costello*, CR22-160 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

lifestyle, his conduct left devastation in its wake. All told, Costello's actions caused over $35 million in loss to the victims of his offenses.

Given his conduct and the harm it caused, the United States respectfully requests that the Court impose a custodial sentence of 120 months to be followed by a three-year term of supervised release and order restitution in the amount of $35,307,160.50[1] as this sentence is sufficient, but not greater than necessary, to meet the goals of sentencing.

### I.   BACKGROUND

A.   Offense Conduct

   1.   Costello defrauds marijuana businesses

Between April 2019 and March 2020, defendant Justin Costello, through his company Pacific Banking Corp., entered into agreements with three marijuana businesses to provide them banking services. Presentence Investigation Report (PSR) ¶15. In these agreements, Costello promised to only execute transactions authorized by the marijuana business. Id. Based upon these agreements, these marijuana businesses collectively gave Costello, through Pacific Banking Corp., millions of dollars. PSR ¶20. Shortly after the marijuana businesses gave him their funds, and contrary to his representations, Costello began diverting a portion of the marijuana businesses' funds to Costello's other companies or for their benefit, to make payments on behalf of other banking clients, and for Costello's personal benefit. PSR ¶16. Costello's fraudulent diversion of funds continued from May 2019 through July 2021. Id. From May 2019 through September 2022, Costello provided the marijuana businesses with account statements that falsely showed that their funds were safe and under his control. PSR ¶17.

As a result of Costello's misconduct, one of the marijuana businesses filed a lawsuit in the U.S. District Court for the Northern District of California. In September

---

[1] While the United States has worked hard to finalize the restitution amount in this case, the United States is still evaluating one victim's claim for additional restitution. To the extent the United States seeks additional restitution for this victim, the United States will inform Costello's defense counsel, the Probation Office, and the Court prior to sentencing.

United States' Sentencing Memorandum - 2
United States v. Justin Costello, CR22-160 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

2022, Costello filed a false Declaration in that lawsuit claiming that $2,923,858.13 of the marijuana businesses funds were in a bank account at Sound Credit Union in Tacoma, Washington. PSR ¶18. At the time, the bank account had a balance of $15.35. Id. Based on Costello fraudulent conduct, the marijuana businesses collectively lost $3,694,905.73. PSR ¶20.

### 2. Costello's fraudulent solicitation of private investors

Between February 2018 and May 2021, Costello solicited several investors to invest in companies Costello controlled, including GRN Holding Corp. and Hempstract, Inc. PSR ¶¶21, 29. Costello made numerous materially misleading statements concerning his educational and employment background, qualifications, assets, and investment strategy when soliciting investors. PSR ¶22. Specifically, Costello falsely claimed:

- He had a Master's in Business Administration from Harvard Business School;
- He was a billionaire;
- He managed money for wealthy individuals, including a Saudi sheikh;
- He was in the Special Forces and had been wounded serving overseas;
- He had over 14 years of experience on Wall Street; and
- He was the CEO of GRN Funds, LLC, a private equity and hedge fund with over $1 billion in assets under management.

Id. During one investor presentation to potential Hempstract investors, Costello falsely asserted that he worked in Seattle, but also had offices in New York and London. PSR ¶29. He also fraudulently claimed to have over 400 clients in the marijuana industry for which he provided banking services. Id.

As described more fully below in the discussion concerning the seriousness of the offense, Costello befriended several of his victims as part of his scheme to defraud. He preyed upon their trusting nature to separate them from their funds. In reliance on Costello's fraudulent statements, approximately 29 investors collectively lost approximately $6 million as part of Costello's fraud. During this time, Costello lived in

United States' Sentencing Memorandum - 3
*United States v. Justin Costello*, CR22-160 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

an expensive condominium in Bellevue, drove expensive cars (including a McLaren), and otherwise lived a lavish lifestyle. None of this money was earned; it was fraud proceeds.

### 3. Costello's fraud on public investors regarding GRN Holding Corp.

In 2019, Costello orchestrated a reverse merger[2] of GRN Funds, LLC into a publicly traded shell company called Discovery Gold Corporation. PSR ¶24. Notably, Costello used funds diverted from the largest marijuana company victims described above to pay for the $300,000 purchase price for Discovery Gold. On July 1, 2019, Discovery Gold, through Costello, its new CEO, filed a Form 8-K with the Securities and Exchange Commission announcing the merger. Id. The Form 8-K, which Costello signed as CEO, contained material misrepresentations, including falsely describing Costello as a graduate of the University of Minnesota with a degree in Public Business Administration and as a graduate of the Harvard Business School and describing GRN Funds, LLC as a "private equity and hedge fund." Id. GRN Funds, LLC never registered with the SEC as a hedge fund. Furthermore, at the time the Form 8-K was filed, the GRN Funds' website falsely stated that it had $1.15 billion in assets under management. Id. While the company did file an Amended Form 8-K on October 2, 2019, in an attempt to correct the misrepresentations concerning Costello's educational background, the Amended Form 8-K represented that Costello attended Harvard University but did not graduate. Id. This was also misleading. Costello attended one course in Harvard's continuing education program.

In addition to the false representations at the time Costello took control of the shell company, Costello continued to make material misrepresentations to the investing public concerning GRN Holding Corp. PSR ¶25. Starting in November 2019, and continuing through at least July 2020, Costello, through GRN Holding Corp., repeatedly issued materially false press releases concerning GRN Holding Corp.'s merger with other companies. PSR ¶¶ 25-27. Costello owned, controlled, or was affiliated with all of them.

---

[2] A reverse merger is when a private company merges with a company with stock that is publicly-traded. Usually, the publicly-traded company is a "shell" with no legitimate business. Rather, it exists in the hope that a private company will purchase it in order to get access to the financial markets.

United States' Sentencing Memorandum - 4
United States v. Justin Costello, CR22-160 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Id. On November 12, 2019, Costello caused GRN Holding Corp. to issue a press release stating that the company had signed non-binding Letters of Intent to acquire 10 companies, including Pacific Banking Corp. PSR ¶25. The press releases touted how the acquisition of these companies would make GRN Holding Corp. more valuable. Id. Throughout January and February 2020, GRN Holding Corp., again through Costello, issued ten press releases announcing the completion of due diligence for each company. Id. Starting in July 2020, Costello began announcing binding Letters of Intent for each company. PSR ¶26. Contrary to the public statements in the press releases, Costello never completed the acquisitions of these companies. PSR ¶27. Furthermore, the companies had little to no revenue or assets. Id.

Between July 1, 2019, when Costello filed the Form 8-K announcing the reverse merger, and May 18, 2021, when Costello resigned as CEO, thousands of investors purchased and sold shares of GRN Holding Corp. based on Costello's fraudulent statements. PSR ¶28. Over 7,500 of these investors suffered a net loss trading GRN Holding Corp. shares. These victims collectively lost over $25 million. Id.

### 4. Costello's fraudulent pump-and-dump scheme

While he was engaged in the fraudulent conduct described above, Costello also engaged in stock manipulation through a series of pump-and-dump schemes. PSR ¶32. Between October 2019 and January 2021, Costello purchased large blocks of stock of thinly traded penny stocks at very low prices. PSR ¶32. Costello recruited, and paid, another individual to fraudulently promote, or pump, the stocks by making materially false statements concerning the companies by tweeting on Twitter. PSR ¶33. As the stocks' prices were increasing (after unwitting investors purchased shares based on the fraudulent tweets), Costello sold his shares into the market at the artificially inflated prices and reaped significant profits. Id. In fact, Costello made $625,092.02 through his pump-and dump schemes. PSR ¶34.

### B. Procedural History

On September 28, 2022, the Grand Jury returned a twenty-five count Indictment charging Costello with numerous counts of securities fraud and wire fraud. When the

United States' Sentencing Memorandum - 5
United States v. Justin Costello, CR22-160 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Indictment was returned, the United States had an agreement with Costello's counsel at the time for Costello to self-surrender to the FBI. Consistent with that agreement, the United States informed Costello's counsel that the Grand Jury had returned an Indictment, and that Costello needed to surrender to the FBI the following morning. PSR ¶36. After conferring with his attorney, Costello agreed to surrender to the FBI in San Diego the following morning. Id. Costello failed to appear and surrender to the FBI the next morning and instead attempted to flee prosecution. Id.

Over the next few days, the United States, together with the FBI, worked diligently to locate Costello. PSR ¶ 37. For example, the United States obtained search warrants to track cell phones associated with Costello, but Costello had turned the phones off. Id. Thereafter, the United States and FBI obtained a search warrant to track the car Costello was driving through its satellite radio signal. Id. On October 4, 2022, the United States and FBI located Costello at a location in El Cajon, California, not far from the United States/Mexico border, and the FBI arrested Costello. Id. Within days, the FBI recovered a black backpack Costello had at the time of his arrest. Id. In short, the backpack was Costello's fugitive toolkit. Inside the backpack, Costello had a fake ID with his picture, but in the name of another individual; $60,000 in United States currency; Mexican pesos; debit and credit cards in both Costello's name and in the name on his fake ID; jewelry; and gold bars. Dkt. 14. Costello has been detained since his arrest.

## II. SENTENCING GUIDELINES RANGE

The United States agrees with the Sentencing Guidelines calculations in the PSR which are consistent with the Guidelines stipulated to by the parties in the Plea Agreement. PSR ¶¶51 – 63. The applicable Guidelines are:

| | |
|---|---|
| Base Offense Level under USSG § 2B1.1(a): | 7 |
| Enhancement for loss of more than $25 million and less than $65 million under USSG § 2B1.1(b)(1)(K): | +22 |
| Enhancement for 10 or more victims under USSG § 2B1.1(b)(2)(A)(i): | +2 |

United States' Sentencing Memorandum - 6
United States v. Justin Costello, CR22-160 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | |
|---|---:|
| Enhancement for sophisticated means under USSG § 2B1.1(b)(10): | +2 |
| Enhancement because offense involved a violation of securities law and, at the time of offense, the defendant was an officer or director of a publicly traded company under USSG § 2B1.1.(b)(20)(A): | +4 |
| Acceptance of Responsibility under USSG § 3E1.1(a) and (b): | -3 |
| Total Offense Level: | 36 |

Costello has one criminal history point and is a CHC I. Thus, the advisory Sentencing Guidelines range is 188 to 235 months.

### III. FACTORS RELATED TO SENTENCING RECOMMENDATION

The United States respectfully requests that the Court sentence Costello to a term of imprisonment of 120 months as it is sufficient, but not greater than necessary, to meet the goals of sentencing. A 120 month sentence is warranted considering all the sentencing factors under Title 18, United States Code, Section 3553(a), including: (1) the serious nature and circumstances of the offense; (2) Costello's history and characteristics; (3) the need for the sentence to promote respect for the law and to provide just punishment; (4) the need to afford deterrence to other criminal activity; and (5) the need to avoid unwarranted sentencing disparities with similarly situated defendants.

#### A. Nature and Circumstances, and Seriousness of the Offense

A sentence of 120 months imprisonment reflects the serious nature and circumstances of Costello's wide-spread fraudulent conduct. For more than three years, Costello engaged in a variety of fraudulent conduct targeting marijuana businesses, his "friends and family", and investors who bought and sold securities in the public markets. Costello's fraud caused significant financial harm. All told, victims lost over $35 million as part of Costello's schemes. While the total amount alone shows the seriousness of the offense, the financial impact on individual victims further demonstrates the seriousness of

United States' Sentencing Memorandum - 7
*United States v. Justin Costello*, CR22-160 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the offense. Numerous victims submitted victim impact statements describing the financial devastation resulting from Costello's illegal conduct. While it is important for the Court to consider every victim's statement, the following selected statements highlight the impact felt by many victims:

- "Mr. Justin Costello's act has cost me thousands of dollars in damages. I wanted/could use the money to pay for my lower back surgeries and medical bills. I am a disabled man who served in the military airlift command flights." – Victim A.L.

- "I start [sic] to invest GRN because of Twitter information from Justin Costello for his future plan and great success stories in his life. To prepare for my son's college tuition and for my families, I invested all of my money but now all in vain. Still I suffer from debt collectors due to this damage…" – Victim B.K.

- After almost 3-4 months of purchasing this investment (October 2019 to January 2020), the stock lost approximately 85-90% of its value [and] that put me in a difficult spot financially. From January 2020 to April 2020…I picked up some extra shifts and spent some time "catching up" to have that amount of savings available to me once again. I was afraid I would not be able to pay my rent [and] other living expenses at times…" – Victim D.S.

- "I started with this stock, listening to Justin's videos, following his advice. I invested my 401 [sic] into his GRNF marijuana stock. I was retired, and after losing that, I had to go back to work. I lost 45,000… I had to sell my boat, which I had bought to enjoy my retirement!" – Victim G.C.

These only a few examples of the devastating financial impact caused by Costello's fraud. As set forth in many of the victim impact statements, numerous victims experienced similar financial ruin by trusting Costello.

But unfortunately, like so many other frauds, the impact of Costello's fraudulent conduct goes well beyond financial loss. Costello's deceit – about his background, his education, and his purported success – was designed to convince unwitting investors to trust him. And trust him they did. But when lies and fraud are exposed, victims are left

United States' Sentencing Memorandum - 8
United States v. Justin Costello, CR22-160 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

with significant emotional and psychological damage. They blame themselves for being gullible and overly trusting. The resulting stress, anxiety, and sense of betrayal causes great emotional and psychological harm, and damages the victims' relationships with friends, family, and others. Like the impact of the financial harm above, the victims' own statements describe this pain:

- "The emotional impact of Justin Costello's actions have been equally devasting [as to the financial impact]. I feel betrayed and violated by his actions, which have caused emotional distress and turmoil. I have lost trust in people and have been unable to sleep or eat properly since discovering his fraudulent actions. The stress and anxiety caused by this ordeal have affected my ability to function normally, and I have had to seek professional help to deal with the emotional fallout." – Victim A.S.

- "I had told several of my friends and family to invest into this stock. Since my friends and family trust my judgment, they made large investments into this stock as well. Since this stock cost everyone everything they invested none of my friends and family trust in my judgment any longer. I still get harassed by them to this day." – Victim K.H.

- "My financial loss is much less than the emotional distress that was caused personally by Justin Costello." – Victim R.H.

- Obviously I lost money, nothing to change my life but just enough to cause concern and stress on me and my wife. It has made me more skeptical of people and not trust others like I used to. In a time of my life where I should be looking towards retirement I have to question other peoples morals and character." – Victim S.V.

- The financial loss impacted me greatly as this was a significant portion of my portfolio. This caused a great deal of stress and anxiety as I tracked all of the developments with GRNF and Justin closely." – Victim I.S.

These are only five examples of the emotional, physical, and psychological damage Costello caused his victims – his thousands of victims. The victim impact

United States' Sentencing Memorandum - 9
*United States v. Justin Costello*, CR22-160 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

statements in this case are powerful evidence of the widespread devastation for which Costello is responsible.

B.      **History and Characteristics of the Defendant**

Defendant Costello's history and characteristics also support a sentence of 120 months imprisonment. Costello's crimes were driven by hubris and greed. As Costello acknowledges in his own letter to the Court, this crime was a result of an individual "chasing after success, chasing after money, who couldn't say no to money, and who made the wrong decisions." Those "wrong decisions" were not isolated events, but rather part of a three-year crime spree involving multiple types of fraudulent conduct targeting a wide-ranging number of victims. During his scheme, Costello targeted businesses, friends and family, and the investing public. Based upon the facts Costello admitted in his plea agreement, it is clear his desire for wealth was matched by his ability to commit all types of fraud.

Beyond the fraudulent schemes, Costello's conduct shows a pattern of brazen dishonesty even after his schemes were exposed.  For example, one of the marijuana businesses that Costello victimized sued him in the U.S. District Court for the Northern District of California.  Rather than accept responsibility for what he had done, Costello chose to double down on his fraud. In September 2022, Costello filed a false declaration in that litigation in which he stated that over $2 million of the victim marijuana business's funds were in a bank account in Tacoma, Washington. In reality, there was only about $15 in the account.

In addition, after being informed of the criminal investigation, advised by counsel, and afforded the opportunity to self-surrender, Costello decided to attempt to flee from prosecution. When he was apprehended miles away from the Mexican border, he had a bag with $60,000 in U.S. currency, Mexican pesos, debit and credit cards and checks, and a fake ID.

There are little to no mitigating factors in Costello's history and characteristics. Costello had an overall positive childhood. PSR ¶¶75, 85. While Costello's father had

United States' Sentencing Memorandum - 10
*United States v. Justin Costello*, CR22-160 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

troubles with alcohol, Costello's father and mother both worked, and the family was financially stable. Id. Costello has a college degree and was in student government in college. PSR ¶77. Based upon Costello's statements to the Probation Office, it appears he had suitable employment after graduating from college. PSR ¶¶ 78-80. Shortly after moving to the Seattle area, however, Costello began his criminal conduct which spanned until shortly before his arrest.

**C.    Need to Promote Respect for the Law and Provide Just Punishment for the Offense**

A sentence of 120 months is also needed "to promote respect for the law and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Costello's widespread, persistent, and damaging fraud demands a lengthy sentence.

**D.    Need to Protect the Public from Further Crimes and to Afford Adequate Deterrence**

A 120 month sentence is also necessary to protect the public from further crimes of the defendant and deter him, and the public, from engaging in similar criminal activity in the future. Given the length of Costello's fraudulent activity and his actions before and after Indictment, the Court cannot be assured that Costello will refrain from further criminal activity in the future. Thus, a significant prison sentence will both protect the public from Costello's future crimes and hopefully deter him from engaging in criminal activity in the future. Likewise, a lengthy sentence will send a strong message to would-be fraudsters that their conduct will be justly punished.

**E.    Need to Avoid Unwarranted Sentence Disparity Among Similarly Situated Defendants**

The recommended sentence of 120 months of imprisonment is also consistent with sentencing practice in this District. The United States considered recent sentences in similar cases before this Court and concluded that 120 months is appropriate and does not create unwarranted disparity. The recommended sentence is consistent with the sentencings in those cases.

United States' Sentencing Memorandum - 11
*United States v. Justin Costello*, CR22-160 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## IV. CONCLUSION

For all of the reasons set forth above, the United States respectfully recommends the Court impose a custodial sentence of 120 months, to be followed by a three year term of supervised release, order restitution in the amount of $35,307,160.50.

DATED: May 11, 2023.

Respectfully submitted,

NICHOLAS W. BROWN
United States Attorney

*s/ Justin W. Arnold*

*s/ Michael Dion*
JUSTIN W. ARNOLD
MICHAEL DION
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-7970
Email: justin.arnold@usdoj.gov

United States' Sentencing Memorandum - 12
*United States v. Justin Costello*, CR22-160 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970